Case No. 15-3130, Ohio State Chiropractic Association and Others v. Humana Healthcare Plan Incorporation and Others. Arguments not to exceed 15 minutes per side. Mr. Rodari for the appellants. Your Honor, as opposing counsel, may it please the court, my name is Dan Rodari and I'm here today on behalf of appellants, Ohio State Chiropractic Association and the chiropractic practice of Dr. Thaddeus Bosman. I'd like to reserve three minutes for rebuttal. This case is about an insurance company's unilateral decision to recoup payments made to Ohio chiropractors long after those providers were paid and relied on the payments they received. Critically, this case has absolutely nothing to do with whether the care provided by those physicians was covered under the Medicare Act. By dismissing plaintiff's claims for failure to exhaust administrative remedies, the district court erred as a matter of law by ignoring the fundamental distinction between substantive claims for entitlement to Medicare coverage, which must be exhausted, and plaintiff's claims for the restitution of past payments already made for care that had already been provided and approved of by Humana. Your Honors, there are three issues before the court today dealing with administrative exhaustion, express preemption, and a jurisdictional question under the federal officer removal statute. Because the first two of those issues are dispositive, I'd like to spend the majority of my time addressing them. So what results then, if you're not going to fuss primarily about the removal, that is, do you stay in federal court and pursue your merits claims? Do you prefer that to going back to state court where you started? We don't prefer it, Your Honor. But we realize that whether the case proceeds is more important than where the case proceeds. And we do believe the case should belong in state court because the claims we've raised arise under the common law of the state of Ohio. Okay. You can go ahead and take it your way. I just wanted to make sure I understood the position. Okay. On the issue of administrative exhaustion, the Supreme Court held in Heckler v. Ringer that- Hey, wait. I'm sorry. I just want to get the scorecard right here. So you think there was federal question? No, we don't, Your Honor. We dispute that. Why are we not starting with jurisdiction then? Well, Your Honor, I'd like to start with administrative exhaustion and express preemption because they're dispositive. But I'd be happy to address jurisdiction first. Yeah. Tell me why the phrase relating to, which was added to the statute in 2011, doesn't answer this. I'd be happy to address that, Your Honor. Reading the language of the statute as amended in 2007, and I'll parse the language- I thought it was 2011. 2011. I'm sorry. I'll parse the language here a bit. But it reads that a civil action or criminal prosecution that is against or directed to any person acting under a federal officer for or relating to any act under color of such office. The language that was added in 2011 said that the civil suit must be for or relate to an act under color of federal office. That under color element pursuant to this Court's holding in Bennett and the Supreme Court's jurisprudence requires a causal nexus between the challenged activity- Why? It's relating to. That to me is the key issue. Causation. You're even going beyond but for, but it's relating to. Your Honor, we believe that the suit must relate to, but it still must relate to, an act that has a causal nexus with the federal officer's duties, which are promulgated by statute or regulation or at the behest of a federal officer's comprehensive and detailed orders. In this case, there is no statute or regulation directing humana, much less authorizing humana, to recoup past payments made to Medicare Part C providers. And we the federal government promulgated by statute or regulation or the direct orders of CMS, humana cannot support removal by claiming that its contract with CMS justifies a federal officer jurisdiction in this case. And we'd rely in support not only on the Woodruff case that was briefed by the parties, but in August of this year, August 2015, the Ninth Circuit just came down with a case, Kalbacci v. Thomas E. Blanchard & Associates, Inc. 797F3-720, where it held that a federal contractor who was hired by the federal government to dispose of confiscated fireworks could not rely on a federal officer removal statute when it was sued for wrongful death arising from the explosion of those fireworks. And the contractor Your point, the defendants have to have been directed to do something under federal law? Yes, Your Honor. So why isn't that argument destroyed by Willingham? No one would have said those guards were being told to beat up the inmate. Your Honor, we believe there's a distinction between claims directed against actual federal officers, such as prison officers, prison officials, or guards, and those who are contracting with the federal officer. If I'm a federal prison The statute doesn't say that. The statute doesn't say it, Your Honor, but it's a distinction that's borne out in the case law, and there are certain district court opinions around the country that have held that when we're looking at the federal officer removal statute in the context of claims against federal contractors, it's not to be read as broadly as All right, I started where you didn't want to go, so go now where you want to go. Thank you, Your Honor. On the issue of express preemption, the issue that the district court based its ruling on, the Supreme Court held in Heckler v. Ringer that to arise under the Medicare Act and therefore trigger the Act's administrative exhaustion requirement, the standing or substantive basis for the claim must be Medicare, or the claim must be inextricably intertwined with a claim for Medicare benefits. This suit is not inextricably intertwined with a claim for Medicare benefits for the simple reason that the recoupment activity that precipitated this lawsuit is wholly unrelated to a substantive coverage determination under the Medicare Act. This case is therefore distinguishable from this Court's past precedents and the Supreme Court's decision in Heckler v. Ringer, which all held that an enrollee or provider who is seeking at bottom to recover payment or services that were not covered before under the Medicare Act had to exhaust that claim before presenting it to a federal district court. Two cases from this circuit come to mind. First in Manakee Professional Transfer Services v. Shalala, Sixth Circuit decision from 1995, this Court held that an ambulance provider who was challenging the Secretary's substantive determination that certain vehicles did not qualify as ambulances under the Medicare Act had to exhaust those claims. And the Court correctly held that if the appellant was successful in that case, they would be for services that were not covered under the Medicare Act pursuant to the Secretary's determination they were challenging. Therefore, even though it was an indirect challenge, it was still at bottom claim for Medicare benefits. Similarly, in Cathedral Rock v. North College Hill v. Shalala, Sixth Circuit decision from the year 2000, this Court held that a nursing home that was challenging the Secretary's decision to terminate its provider contract had to challenge that decision through the Secretary's administrative process. And the reason why was pretty simple. If the nursing home was successful in that challenge, it would be entitled to increased benefits under the Medicare Act for services that were no longer covered because of the termination of its provider contract. And similarly, in Heckler v. Ringer, the seminal case in this area, the enrollees were seeking coverage for a surgical procedure that was not covered under the Medicare Act and therefore had to exhaust. This distinction is even more apparent in the context of Medicare Part C, especially viewed through the Rencare decision from the Fifth Circuit. There, the Fifth Circuit held that under the unique circumstances under Medicare Part C, where the government's risk is extinguished by capitated monthly payments to a Medicare Advantage organization and in disputes where enrollees have no liability because the services have already been provided and they're prohibited from bearing any liability for covered services, any dispute between a provider and a Medicare Advantage organization that doesn't relate to coverage is not intertwined, much less inextricably intertwined, with a claim for Medicare benefits. So bottom line, you only exhaust when it's an enrollee claim? Not necessarily, Your Honor. A provider may be required to exhaust if it's pursuing a claim related to coverage. I think a good example is the Associates Rehabilitation case relied on by the District Court and by Humana. In that case, providers were challenging the Humana's decision to deny payment for services that it deemed not medically necessary. And we believe the District Court came to the correct conclusion. We disagree with the rationale. But the District Court held that because that claim was at bottom, the claim for Medicare coverage, it had to be exhausted. And the District Court went on to distinguish RENCARE, and we believe it distinguished it on faulty grounds. It's often said bad facts make bad law, but in that context, I believe bad arguments made bad law. And the Associates Rehabilitation Court held that because in 2006 Medicare Advantage was changed so that bids are now set in accordance with a competitive process, the federal government has an interest, a financial interest, in the resolution of provider MAO payment disputes. We don't believe that's correct. And we rely, first of all, on the language of the statute itself. 42 U.S.C. 1395 W-23A provides that an MAO will receive capitated monthly payments from the federal government. The bid process didn't change that. And for further explanation, we direct the Court's attention to the Zanarchy District Court opinion from the Eastern District of Michigan cited in our brief year 2013. There the District Court surveyed the 2006 amendments to the bid process under Medicare Part C and concluded that regardless of what was changed by that amendment, the MAO still receives a capitated monthly payment set in accordance with CMS policies, and the government's risk is then extinguished. So then if you have a dispute between a provider and an MAO where coverage is not disputed, it's simply a dispute between those entities. And there is nothing to do about that. So what, in your view, should happen if these two things are true? There was federal jurisdiction, but the District Court erred in terms of saying, you know, failure to exhaust and shouldn't have dismissed on that ground. So what happens next if that's where things are? If that's the case, Your Honor, then we believe the case should be remanded to the District Court for further proceedings. At the time that Humana's motion was filed, of course, they hadn't answered the complaint, so we hadn't engaged in any discovery. And we would proceed from there. The case was also... What about the possibility of preemption? Express preemption, Your Honor, was an issue raised in Humana's briefing to the District Court and preserved on appeal, and I'd like to address that now based on your question. The express preemption provision applicable to Medicare Part C, 42 EOC 1395W-26B3, provides that federal standards will preempt any state law, and that would include common law claims based on the 9th District's decision, and we don't dispute that. However, we need to look at this from, I think, a two-step inquiry. First, does the Medicare Act establish standards? And by standards, we look to the 9th Circuit's definition, which held that those standards must be statutes or regulations, not sub-regulatory guidance, not manuals, not pamphlets. We're looking at statutes and regulations. The second question, does any state law or regulation, or in this case, do plaintiff's common law claims implicate those standards? In this case, they do not, because the Secretary has not established any standard by regulation dealing with a Medicare Advantage organization's ability to recoup past payments made to non-contracted providers. That stands in stark contrast to the regulations promulgated under Medicare Parts A and B. If you look at the regulations there. Let me just make part of your thinking. So you've got a preemption, which is saying the state law claims potentially are preempted, can't be brought into the case. I guess I want to know, as part of your answer, whether there's any way in which you can get relief under Medicare law. No, Your Honor, we don't believe so. And... So you have no argument that Medicare law prohibits you from doing what it's doing for new services provided that you bill for? No, there's no Medicare law that expressly prohibits it. There's no Medicare law that sanctions it. We believe there is a lacuna, or a hole, if you will, in the regulatory scheme. Except that you're billing for things that, at least on their face, and I don't think they challenge it, are completely legitimate, that you should at least get this minimum level and they're not paying it to you. So you sound like you would potentially win on that argument. To me it's not a lacuna, it's a counter-argument that may or may not have basis. That's an important issue, and I think in this case, oral argument is particularly helpful. I'm glad the Court granted it, because a lot of these issues, the resolution of these issues, in many ways, depends on how you frame the question. In this case, Humana has framed it as a payment dispute that's preempted by Medicare regulations which set benchmark payments for non-contracted providers. We see this as a dispute over Humana's ability to recoup payments. And it's true. Humana's decided to recoup those payments by deducting them from future bills submitted by Dr. Bosman and other members of the Chiropractic Association in this case. But we believe there is an important distinction between failing to pay a claim in whole or in part due to a substantive coverage determination, or failing to pay that claim for some other reason. That was a distinction recognized by the Supreme Court of Texas in 2011 in the Khrustos Gulf Health case, where the Supreme Court of Texas adopted and applied REN care based on the urging of Amici Health and Human Services in that case, which we find to be interesting because Humana has argued that REN care is no longer good law and that it impacts the federal government in adverse ways. But the federal government was urging the Supreme Court of Texas to adopt that case. Do you concede that the regulation or the interpretation of the regulation that says it's capped is legitimate? Your Honor, we do not. And I'd like to point to this Court's precedent, which held in Battle Creek Health Systems v. Levitt, 498 F.3.401, that these Medicare manuals, which aren't statutes, aren't regulations, are entitled to respect, quote, to the extent they have the power to persuade. So this is the Secretary's interpretation of her own regulations. It's not binding on this Court. It's the providence of this Court to say what the law is. And we believe that in the context of this case, we're looking at two different statutes 42 U.S.C. 1395 W-22A2A, which says that a Medicare Advantage organization like Humana satisfies its obligations under Part C if it pays providers at least the original Medicare fee schedule rate. And then Section K of the same statute, which says that providers, like Dr. Bosman, must accept the original Medicare rate as payment in full. There's a way to read those two statutes in harmony, which we're required to do under the harmonious reading canon. And if you do read them in harmony, it means that if a provider, like Dr. Bosman, receives a payment that is limited to the original Medicare fee schedule rate, he can't complain about it. He has to accept that as payment in full. We don't dispute that. But the statute does not place a limitation on what a Medicare Advantage organization can pay. I also think your time's expired, unless my colleagues further. You'll have your time for rebuttal. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. I'd like to start, Judge Sutton, with some of your questions about jurisdiction, just to close that loop, although I hear them almost conceding that point. The reason that they're almost conceding it is because the only element they challenge is the causal connection, which Bennett said is quite a low threshold. And the cases that they cited... Doesn't the amendment in 2011 get rid of that whole inquiry that it says relating to? Who cares about causation? Your Honor, I'm just responding to their argument on causation. But, I mean, isn't Bennett even construing the prior statute? Bennett is construing the prior statute, Your Honor. I mean, it says relating to. I mean, ERISA, it's on and on we go. And, Your Honor, I mean, what Bennett said was you just have to be doing your job as a federal officer, and that's clearly what we were doing under relating to or causation. And you're saying that because part of your job is sending them money. Absolutely. So anything that you do with respect to sending them money is under...is relating to your actions under color? That's correct. Federal law, if you repossess their vehicle, you know, as part of your money, somehow you've given them a vehicle, and you say, oh, we're entitled to the vehicle, so you send your get the car, and you beat them up. I mean, that's their fireworks case, but, you know, you're arguably resorting to self-help here. So how is that relating to your actions as a federal officer? Well, Your Honor, we have no relationship with them but through their provision of services to Medicare enrollees that are members of our Medicare Advantage plan. So, I mean, you could have a situation where maybe we employ a doctor and we're dealing with an employment relationship rather than through the provision of Medicare services and the payment of Medicare services, but, Your Honor, I mean, the payment of the services is a critical...I mean, the system wouldn't work if we didn't pay non-PAR providers. So I think that that necessarily relates to this issue, and their effort to say, well, there's some district court cases out there where government contractors, they make it a higher standard. All of those are inconsistent with Bennett. Basically, your position would be that anybody who sues you for anything having to do with your relation to them that comes out of Medicare money in some...in any way, whether Medicare pays for it or not, you can remove because of federal officer jurisdiction. Well, Your Honor, I think the limitation here is the colorable federal defense. They've conceded that, but we have to have a colorable federal defense in order to remove. And here, that's just not an issue because they've conceded it. But, yes, I mean, if you're dealing with a payment dispute under Medicare, this is necessarily part... Even though it's not a dispute about Medicare coverage or the applicability of service or Because you have to look at it from the defendant's perspective. And from the defendant's perspective, we are pursuing...we are trying to pay in accordance with the Medicare fee schedule. We are trying to mitigate against fraud, waste, and abuse, as we described in our... Well, I suppose you're saying that's your colorable defense, so that if it gets more preposterous, you say it's just not colorable. I mean, again, suppose you're renting them property, and you've got a damage claim under your rental property, and you say, well, we're paying you money, so we're just going to recoup it out of your...because rent is part of your expenditures as part of your capitation. But I think there you're in a landlord-tenant context. Would you sort of concede that's probably not colorable? I think that's probably not a colorable defense at that point. All right. Go ahead. So, moving on, unless there's further questions on jurisdiction, I want to talk about exhaustion for a few moments. Obviously, exhaustion has to be construed broadly. And really, we've had this debate in the briefs about what CMS intended, how much they are entitled to payment under the Medicare Act. And I think at the end of the day, who better to answer that than the agency itself? And that's why this needs to be channeled through the administrative process. We talked about...there was a lot of discussion about the bid process and how that works. I think one thing that they do not dispute is that, based on the changes to the statute in 2006, and Evandia from the Third Circuit's a good case that describes this, when a Medicare Advantage organization saves money, i.e., it recoups the overpayments, that does endure to the benefit of both the government and the enrollees. Because the way it works is all of our costs are factored in...our costs from this year are factored into next year's bid. And then, whatever that bid is, however far below it is the CMS benchmark, that delta is then refunded in part to the government and the rest is given back to the enrollees in forms of supplemental benefits and other benefits they'd not normally be entitled to. So that's what Evandia says, which is any cost saving does endure to the benefit of the government and the enrollees. So that is clearly a change from the lay of the land as it was in RENcare. And obviously the other key dispute between...or key distinction with RENcare is RENcare involved a contracted provider as opposed to a non-participating provider. And the Fifth Circuit emphasized a number of points in its opinion that this is a contractual dispute between two parties. There's no need to look at this federal regulatory regime. Well here, there is no contract. All we have is the federal regulatory regime and Congress and CMS have promulgated a number of regulations that specifically deal with non-PAR providers and how we relate to them. And if you look at CMS's manual, this is a point they don't dispute. Chapter 13 of that manual describes in detail the exhaustion process and it walks through specifically with non-PAR providers and how they have to go through this process. And they don't have a response to that. I mean it's kind of the ostrich defense, like let's not talk about it. But CMS has this... Isn't that the discussion is in terms of not getting paid for something that you have cover...that you claim you have coverage for? I'm sorry. And correct me here if I'm wrong, but the exhaustion requirement is illustrated or couched in terms of a non-contract provider who doesn't get paid because his services allegedly don't come within the coverage, within the bounds of Medicare. Well, no, your honor. It's broader than that. I mean an organization determination is any refusal on our part to pay in whole or in part services that they've rendered. And there's no limitation that says this is only when you dispute the underlying provision of services. I mean it can be for anything and that's why I think it has in whole or in part in the reg itself. And then you look at what's in the manual which fleshes all of this out and I would say the other thing that I just would want to emphasize is in Chapter 13, the provisions that we were relying on were all added in 2012. So one thing here is the statutes, the regs, the guidance, they're all evolving and you look at some of the dated cases, they just don't take this into account because it's more recently folded into the guidance. They did not bring their claim under the Medicare Act, right? That's correct. So a state law. So if they had brought their claim under the Medicare Act, then it would be rising under. That part's easy in terms of exhaustion. Wouldn't they have had, that's the part of this case I'm just not following. I mean it seems to me, I would have thought they had a pretty good argument that the past is the past. If you overpay, you overpay your problem. The capping thing strikes me as egregiously flawed regulation that's not consistent with the statute. It says the least amount and I would have thought this is just under the Medicare Act and you say, hey we provide you these services. I know last year we got paid a little more but that's fine. We're allowed to accept more than is owed and we've just rendered these services in the new year and you're not paying us. Pay us. I know you're not their lawyer but I will ask you this. If we're going to say you're right under the exhaustion thing, should they be allowed to amend their complaint to bring a claim under the Medicare Act, which is consistent with the exhaustion point, which if they're going to exhaust, why not exhaust the federal claim which is, strikes me as the most relevant point. I don't believe they need to bring it through the administrative process. I don't believe they have a private right of action to bring it in federal court against us for payment issues. I mean I could, and obviously this wasn't briefed, Your Honor. So you're saying that there's no right of action under the Medicare law to do this? Your Honor, that's my. I don't know. You don't know. I think that's right. Obviously it wasn't prepared to address that today. There's no right of action for getting less money than they're supposed to? Under the Medicare Act, I believe that's the case. I mean if it were otherwise, I think they would have brought that claim. But they had to dress it up as a state law claim. So you mean if the Medicare standard payment is $1,000 and you send them a check for $10, they can't go anywhere? They can't go to state court because it's a federal question and they can't bring it under the Medicare Act because you just said so? No, they can go through the administrative process. I mean that's exactly where they go. And they exhaust through that process. I think the other thing... For any reason that you're not paying them, that is, if your CEO wants more alimony from Dr. Bosman and deducts it from the payment, same question, same result. They've got to exhaust. If you're not paying them as we should be paying them, they would have to exhaust, Your Honor. And I think the other thing to keep in mind here is this overpayment situation, overpayments and underpayments are pervasive in this space. If you said... I take it that that's the truth, Mr. Bergeron, but what's the usual method for handling that? Is it recoupment? Yes, Your Honor. I would say two things. If you have a contract, usually it spells out the process. If you don't have a contract, usually you send out a notice. I mean, look, I don't dispute their frustration here. No one likes to be told you have to pay money back, but that's part of the process. Usually we send something out and it gets paid. I mean, usually we don't have these disputes and it goes both ways because they have underpayment claims sometimes and they come back to us and say, hey, you guys owe us more money and we sort it out. But so are you saying that in fact, as far as one knows from reports and so on, there aren't claims like this through the exhaustion process, that when an insurance company stiffs the chiropractor, they just eat it? No. No, I think it is exhausted through the administrative process. So they don't file a claim in federal court is what you're saying? No, but what I'm saying is are there... Are there... I mean, there are reports about everything. Are you just sort of... I mean, I'm not holding you to it, but you're sort of asserting that in fact, people like this who are stiffed by the insurance company for past monies, they just go through the administrative process? Your Honor, we cited some cases in our brief where providers were exhausting through the administrative process. There were some Westlaw sites. They're not the easiest things to read, but those are examples, just to give you a tangible example of, yes, providers are going through this process. Are those all cases of disputed payment in the first instance as opposed to recoupment? I believe one was an overpayment, and I just don't know whether there was a recoupment or not. Okay, I can look it up. But there's also statistics about the administrative process. Like, you can go find on CMS's website how many people exhausted through a particular period of time. So, I'm maybe being slow in this area, but it's not exactly intuitive, and it's not what I spend most of my free time dealing with. But how do you exhaust these state law claims? Well, Your Honor, but the point is, you can't bring a state law claim... But what's supposed to happen? I mean, Judge Adams dismisses for failure to exhaust, so what happens next? And they follow the administrative process. The first level is through us. But the administrative process has a route for dealing with state law gripes? At the end of the day, Your Honor, what they are trying to get is the difference in payment. So, you can dress that up in state law attire, or you can just say, we want our money back. But, I mean, they are the masters of their complaints, so it's a state law claim. And I just, I guess I'm a little surprised that this regime has an approach for dealing with state law claims. It's odd to me. I mean, I'm not even sure I think agencies have that authority. I mean, it's like, where do they get these Article II branches get authority to resolve state law claims? It's resolving the payment dispute. And I think if you look at the Ninth Circuit case, I believe it's Kaiser, where it said, look, they brought this as a state law claim for unjust enrichment or whatever it is. But it really is, at the end of the day, a claim for benefits. So they have to- I mean, I- That to me, that's, I'm sorry to just to finish the thought, but that just seems to me to be another way of saying this is complete preemption. In other words, you're really saying the exhaustion and preemption things are the same line. Wherever that line is, one has to find it. And then when you find it, you have the answer to both questions. Am I right about that? I think they are very closely related. And I think in this case, if you look at what their claims are in terms of the state law claims, they are for a determination that there's a declaratory judgment that we can't, that we have to pay them more than the Medicare fee schedule, which- More a judgment that you can't recoup stuff that you have done before. You can't resort to self-help. But I thought your position was going to be that if they brought a state law claim through the administrative process, they would just throw it out, saying we have no jurisdiction over that. We can't decide state law claims. Well, I don't think that- Therefore, they would have no place to go with it. Very clever argument. No, but I thought that was. Am I wrong? I would say, I don't think, I mean, they don't file a complaint here. I mean, it's more informal because it's administrative, and you say, I should have been paid X amount, you paid me Y amount, and then it gets adjudicated that way. By the way, you also violated the following state law, state laws, you're, you know, we're entitled to compensatory damages and all sorts of other stuff because of the evils you've done. And what I would say is there are a number of cases in the exhaustion space that say, look, just because you can't, I mean, this is how exhaustion works, right? You can't, just because you say, well, I would prefer a different remedy, I want to get, you know, some state law benefit, I want to get punitive damages if you were bringing a tort claim, you don't get out of the administrative process by claiming that. I mean, you still have to go through the process because fundamentally, what this is about is payment for services rendered to Medicare rollouts. What's going to happen is they're going to go through the administrative process, they'll get nothing, but they will have exhausted at that point, and they then have their state law claims. But you kind of think that it's the same inquiry on preemption as exhaustion anyway. So I'd have to, I have to say, I'm really wondering why we're not thinking about preemption first because it'll be, don't you agree with me? It'd be very strange to say these state law claims are not preempted if just, I know that's not your position, but hypothesize that that's the outcome, then to force them through a process that the agency guys are going to say, I don't know what you're talking about. If you can't fill in this space on this line, you can't get anything, it'll take a year, they'll get nothing, and then we'll go back to the state law claims. So shouldn't we just figure the preemption thing out? Well, I'm happy, I'm happy for you to do that, Your Honor. Obviously I was relying on this because it's what the district court relied on, but I would agree with what you're saying because it's not like they go through that process and then they say, okay, great, now we get to do our state law claims. At the end of that process, they get to go to federal court and you've got the complete record there, the agency has weighed in on it, and then the federal district court decides at that point. Except the agency has hypothetically said, we don't know from state law claims, we're not going to, we're not going to, we're going to dismiss them, we're going to address them, but then they would be alive because now you've exhausted them because the agency said something about it. Is that right? Right. I mean, at that point, you'd... The only thing the agency could do is grant relief, which moots the state law claims, but it can't otherwise reject the state law claims. It doesn't have that authority. And they can say anything. What? I mean, whether they say it or not, no matter what they say... These agency people don't even know what some state law claims mean. No, but either they say you lose or, I mean, if they say you win, they get their money, but either the agency says you lose, regardless of whether they should, or they say, we're not going to deal with it. In either case, they go back to federal court and argue who's right. That's correct. Is that right? That's correct. Okay. Judge Cook, did you have something? Yeah. Anything else? Thank you. Okay. Thank you, Your Honors. You have three minutes for rebuttal. Thank you, Your Honor. I'd like to begin by addressing the organization determination, which is the administrative review process that Humana is insisting we need to exhaust under the Medicare Act. Of course, our position is these claims don't arise under the Act, therefore it's not required, but I'd like to cite the definition of what an administrative appeal actually is under Medicare Part C. I'm reading from 42 CFR section 422.561. It says that an appeal means any of the procedures that deal with the review of adverse organization determinations on the health care services the enrollee believes he or she is entitled to receive, including delay in providing, arranging for, or approving the health care services such that the delay would adverse the effect the health of the enrollee, or on any amounts that the enrollee must pay for a service, as defined under section 422.566E. So it's all about enrolling. It's all about an enrollee's substantive right to health care coverage, Your Honor. And that's why Runcare was correct. It found that in a patent... What about their response that you can't take what's really a federal claim and just give it a state law label? Well, Your Honor, we don't agree with that because it's not a federal claim. If we were seeking to... Is this court held in Manakee and in Cathedral Rock in 1995 and 2000? If we were seeking to recover substantive Medicare benefits or change the Secretary's decision on what's covered and what's not covered under the Medicare Act by a state law declaratory judgment action, that would be required. We'd be required to exhaust because that is inextricably intertwined with what the Supreme Court has said is at bottom, a payment for Medicare benefits. And in this case, we aren't challenging the payment levels. We're saying, I think Judge Boggs put it correctly, what's in the past is in the past. And the Medicare Advantage Organization bears the risk for payments it makes in the past. And am I right that if the Medicare level was $1,000 and they said, we don't care, we're going to pay you $800 because we think that's too much, would you have to exhaust that claim? If it were not related to coverage, no. If they said, we just don't think it's worth $800 because we don't think you're a... You're a bad chiropractor. ...you're a bad chiropractor, then no, we don't believe that would be, we'd be required to exhaust. If they said, we're not going to pay you the full amount... Okay, so your view is that because of what you just read, it's coverage, period, not amounts. The benefits relate to coverage, it must be exhausted because coverage is what the regulatory scheme turns on. So why didn't you bring a claim under federal law? I don't quite follow that. I mean, so you're, the law says you get the minimum payment rate. If they pay you more, so be it. It's done. There's the capping thing. Let's assume that reg is not valid. Sure. Then you have future services and you invoke Medicaid or Medicare law to get them paid. The issue with that, your honor, is that we've been talking about the inextricably intertwined prong for a claim arising under the act. If we sought to enforce a substantive right under Medicare law, the standing and substantive basis of our claim would be the Medicare act. Therefore, it would have to be exhausted under Heckler versus Ringer. Yeah, fine. I think you'll win. And we very well might, but we don't believe that there's a reason to exhaust because the way we framed the complaint, it does not arise under the Medicare act to begin with. Yeah, but I'm not making an exhaustion argument. I'm making the point of, I just don't understand why you didn't invoke directly the administrative process and the Medicare law to get your clients paid. They did perform future services. They weren't paid. You're entitled to payment and you don't think a recoupment applies here. Why not do that? The basic answer to that question, your honor, is because humanist recoupment activity has nothing to do with coverage. And we believe, as I just read from the regulations, that the administrator scheme deals with addressing coverage disputes. And therefore, we saw no reason to channel this through a process that has nothing to do with a dispute between a provider and a Medicare Advantage organization. What about preemption? What do we do with this? So if you're right, it has to go back and we're now going to have a whole new round about preemption? Well, your honor, the court can address preemption now, of course, because Humana raised it before the district court and this court could, in theory, we don't think it should, but it could be reaffirmed on alternate grounds. We don't think it should because preemption depends on there being specific federal statutes or regulations that touch on the specific allegations made in the plaintiff's complaint, as Judge Scheinle described in the Well Care Opinion, Southern District of New York, 2011. In that case, she found that even though Medicare had promulgated regulations governing payment generally, there were no regulations or statutes dealing with the situation where a Medicare Advantage organization pays less than the fee schedule rate. Recoupment business. Exactly. That wasn't there. Exactly. Recoupment is not there, your honor, and we believe that on those grounds, express preemption does not apply. I see my time has expired, so I will just respectfully ask the district court, that the district court be reversed and that this court remand for further proceedings. Thank you very much, your honors. Thank you, counsel. That case will be submitted.